

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2005

# USA v. Agnew

Precedential or Non-Precedential: Precedential

Docket No. 03-2654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Agnew" (2005). *2005 Decisions.* Paper 1100.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1100

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 03-2654

—————

UNITED STATES OF AMERICA

v.

AARON AGNEW,
Appellant

————————————

Appeal from the United States District Court
for the Middle District of Pennsylvania
District Judge:  Honorable William W. Caldwell
(D.C. Criminal No. 02-cr-00055)

Argued May 27, 2004 and
On Remand from the United States Supreme Court
by Order of February 22, 2005

BEFORE:  RENDELL and COWEN, <u>Circuit Judges</u>,
and SCHWARZER,[*] <u>District Judge</u>.

————————————

[*]The Honorable William W Schwarzer, Senior United States
District Judge for the Northern District of California, sitting by
designation.

(Filed May 11, 2005)

---

LORI J. ULRICH    [ARGUED]
JAMES V. WADE
DANIEL I. SIEGEL
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
    Counsel for Appellant

JAMES T. CLANCY
THEODORE B. SMITH, III [ARGUED]
THOMAS A. MARINO
Office of the United States Attorney
220 Federal Building & Courthouse
228 Walnut Street, P.O. Box 11754
Harrisburg, PA 17108-1754
    Counsel for Appellee

_____

OPINION OF THE COURT

---

SCHWARZER, <u>Senior District Judge</u>.

Aaron Agnew appeals his conviction for distributing crack cocaine and being a felon in possession of a firearm. He contends that the District Court erred in denying his motion to suppress physical evidence, and in preventing him from impeaching a witness with evidence of a sixteen-year-old

2

forgery conviction. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we exercise jurisdiction pursuant to 28 U.S.C. § 1291. We will affirm the conviction.

**FACTUAL AND PROCEDURAL HISTORY**

Agnew was charged in an indictment with distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1), possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

Before trial, Agnew moved to suppress the fruits of the search in connection with his arrest. At the suppression hearing, Dauphin County Sheriff's Deputy Gary Duncan testified that he was assigned to the Fugitive Task Force charged with "the service of all violent felony warrants, drug warrants and any other cases referred to [it] from Dauphin County or the surrounding communities." Agnew's case was referred to Duncan's unit because Agnew had twice previously evaded capture by jumping from a second story window and by holding onto the roof rack of a passing car for a block and a half. Duncan had learned from an informant that Agnew "was at the residence [at 2740 Ludwig Street] and that he was to be in possession of a firearm, a revolver, . . . and that he was also to be in possession of some narcotics." Duncan checked with the Drug Task Force and learned that it had no investigations pending against Agnew.

Duncan and a group of other officers went to 2740 Ludwig Street. He and six other officers approached the front

3

of the residence, and four or five officers were posted around the perimeter and at the rear of the residence. Some of the officers wore "raid gear," including bulletproof vests, and carried ballistics shields. Duncan testified that when the officers knocked on the front door of the residence and announced, "Police, open the door," he saw Agnew pull aside a curtain in a window of the home. He then heard "what sounded like scuffling inside, running around." Duncan testified that he "felt that due to the knowledge that [Agnew] had a handgun that we were compromised and we decided to take the door." The officers then entered the residence and apprehended Agnew as he ran up a flight of stairs. Once inside, officers noticed in plain view a clear plastic bag containing cocaine. They thereafter obtained a search warrant and found a .22 caliber revolver and fifteen grams of cocaine in the home.

The District Court denied Agnew's suppression motion. It found that the officers acted pursuant to an arrest warrant, and held that exigent circumstances justified the entry into the home.

The day before trial, the government made a motion in limine to prevent Agnew from cross-examining a government witness, Wyatt Dawson, using a sixteen-year-old forgery conviction. The court granted the motion at trial, stating, "I have read the motion and your brief. I am going to sustain the objection." Dawson subsequently testified that he had purchased crack cocaine from Agnew on numerous occasions and that he rented and lived in the residence at 2740 Ludwig Street. In addition to the testimony of an officer who searched the residence, the government also presented several witnesses

4

who testified to buying crack from Agnew. Agnew himself took the stand and testified that the firearm and drugs were owned by Dawson, who was in fact the dealer who supplied Agnew with drugs.

The jury convicted Agnew of distribution of crack cocaine and possession a firearm by a convicted felon, but acquitted him of use or possession of a firearm during a of drug trafficking crime. He was sentenced to a term of 300 months' imprisonment for distributing crack and to a concurrent sentence of 120 months' imprisonment for possessing a firearm when a convicted felon. Agnew timely appealed to this Court. On appeal, we affirmed the conviction. *See United States v. Agnew*, 385 F.3d 288 (3d Cir. 2004). On February 22, 2005, the Supreme Court granted certiorari; in the same opinion, it vacated the judgment and remanded the case to this Court for consideration in light of *United States v. Booker*, 543 U.S. __, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005). *See Agnew v. United States*, __ U.S. __, 125 S. Ct. 1333; 161 L. Ed. 2d 94 (2005). In vacating the judgment, the Supreme Court did not indicate any disagreement with our analysis wherein we affirmed Agnew's conviction. Herein, we will again affirm the conviction, and repeat our analysis below. However, having concluded that the sentencing issues based on *Booker* are best determined by the District Court in the first instance, we will vacate the sentence and remand for resentencing in accordance with *Booker*.

5

**DISCUSSION**

**I.**

Agnew first argues that the District Court erred in finding that the officers' entry into 2740 Ludwig Street was justified by exigent circumstances. We review the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts. *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). We may affirm on any ground supported by the record. *United States v. Jasin*, 280 F.3d 355, 362 (3d Cir.), *cert. denied*, 537 U.S. 947 (2002); *United States v. Belle*, 593 F.2d 487, 499 (3d Cir. 1979) (en banc) (affirming denial of suppression motion on different ground).

We find that the entry into the residence did not violate Agnew's Fourth Amendment rights because the officers were armed with a warrant for his arrest. *Payton v. New York*, 445 U.S. 573 (1980), establishes that police may enter a suspect's residence to make an arrest armed only with an arrest warrant if they have probable cause to believe that the suspect is in the home. *Id.* at 602-03; *see also United States v. Clayton*, 210 F.3d 841, 843 (8th Cir. 2000) (holding that a valid misdemeanor arrest warrant "carries with it the authority to enter the residence of the person named in the warrant in order to execute the warrant so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling"). The District Court found that the officers entered the residence for the purpose of executing an arrest warrant, and this finding has not been

challenged. Indeed, Duncan testified that he was assigned to the Fugitive Task Force charged with serving arrest warrants, and Agnew testified that he was aware that there was "a warrant out for [his] arrest" at the time of the arrest. Moreover, the police had probable cause to believe that Agnew was in the home because they saw him through the window.

We note that *Payton* only addresses entry by officers into the residence of the subject of the warrant, 445 U.S. at 603, and that there was no testimony at the suppression hearing about whether 2740 Ludwig Street was Agnew's residence. However, whether the home was Agnew's residence is ultimately irrelevant because under any of the possible alternatives the entry pursuant to the arrest warrant did not violate Agnew's Fourth Amendment rights.

If Agnew resided at 2740 Ludwig Street, his arrest was lawful under Payton because the police acted pursuant to an arrest warrant. *See id.* at 602-03. If Agnew did not reside at 2740 Ludwig Street, he may have lacked a privacy interest in the residence and would have no standing to challenge the police officers' entry. *Minnesota v. Olson*, 495 U.S. 91, 95-97 (1990) (holding that only a person with a reasonable expectation of privacy in a residence—like an overnight guest—may complain that an entry into the residence was unlawful). In any event, even if Agnew, although not a resident at 2740 Ludwig Street, did have a privacy interest, the entry did not violate his privacy rights. The Supreme Court held in *United States v. Steagald*, 451 U.S. 204, 211-14 (1981), that the Fourth Amendment does not permit police to enter a third person's home to serve an arrest warrant on a suspect. But

7

*Steagald* protected the interests of the third-party owner of the residence, not the suspect himself. *See id.* at 212 (stating the issue to be "whether an arrest warrant—as opposed to a search warrant—is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances"). As the Ninth Circuit observed:

> A person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's fourth amendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another.
>
> The right of a third party not named in the arrest warrant to the privacy of his home may not be invaded without a search warrant. But this right is personal to the home owner and cannot be asserted vicariously by the person named in the arrest warrant.

*United States v. Underwood*, 717 F.2d 482, 484 (9th Cir. 1983) (en banc) (citations omitted); *see also United States v. Kaylor*, 877 F.2d 658, 663 n.5 (8th Cir. 1989) ("*Steagald* addressed only the right of a third party not named in the arrest warrant to the privacy of his or her home. This right is personal to the homeowner and cannot be asserted vicariously by the person named in the arrest warrant."). Thus, even if Agnew was a non-resident with a privacy interest, the Fourth Amendment

8

would not protect him from arrest by police armed with an arrest warrant.

Because the officers entered the residence armed with a warrant for Agnew's arrest, and had probable cause to believe that he was inside, the District Court properly denied the motion to suppress.

## II.

Agnew next contends that the District Court erred in preventing him from cross-examining Dawson using the witness's sixteen-year-old forgery conviction. He argues that we should review the district court's decision de novo, and that the evidence should have been admitted because it would have helped resolve a dispute between two witnesses—Dawson and Agnew—about who owned the gun found in Agnew's room.

### A.

Agnew concedes that we usually review decisions to exclude evidence for abuse of discretion. *See United States v. Saada*, 212 F.3d 210, 220 (3d Cir. 2000). He contends that we should employ plenary review here, however, because the record does not reflect that the district court actually exercised its discretion.

In *United States v. Himelwright*, 42 F.3d 777 (3d Cir. 1994), we stated that "[w]here . . . the district court fails to explain its grounds for denying a [Federal] Rule [of Evidence] 403 objection and its reasons for doing so are not otherwise

9

apparent from the record, there is no way to review its discretion. In such cases, we need not defer to the reasoning of the district court." *Id.* at 781 (citation omitted). Agnew asks us to extend this principle to decisions under Rule 609. The District Court stated, "I have read the [government's] motion and your brief. I am going to sustain the objection." We believe that this statement adequately reveals the Court's reasons for sustaining the objection: it agreed with the arguments contained in the government's brief. In any case, we find that the Court's decision should be affirmed even under a plenary standard of review.

## B.

Federal Rule of Evidence 609(a) permits parties to use evidence of a past conviction to impeach witnesses "if it involved dishonesty or false statement." Forgery, of course, involves dishonesty and false statement. *Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 655 n.3 (3d Cir. 1989). But Rule 609(b) states that

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

10

Here, Dawson's conviction was more than ten years old.

We find that the probative value of the evidence of Dawson's forgery conviction was sufficiently small that the "interests of justice" did not warrant its admission, and that any error in refusing to admit the evidence was harmless. *See United States v. Colletti*, 984 F.2d 1339, 1343 (3d Cir. 1992) (employing harmless-error analysis in the Rule 609(b) context). Two witnesses other than Dawson testified that Agnew sold crack numerous times, and Agnew admitted as much shortly after the crime. The police found cocaine in Agnew's shoes. Likewise, Agnew admitted that he knew that the gun had "come from" two individuals named "Nature" and "Light," and a police officer testified that drug dealers commonly keep guns at their disposal. Indeed, the jury had already learned that Dawson used crack cocaine. It would not have resolved the question of ownership of the gun and drugs in favor of Agnew simply because it also learned that Dawson had an old forgery conviction.

For the reasons stated, we will AFFIRM the conviction. However, we will vacate the sentence and remand for resentencing in accordance with *Booker*.