

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-22-2005

# USA v. Jones

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3129

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Jones" (2005). *2005 Decisions.* Paper 210.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/210

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3129
_____

UNITED STATES OF AMERICA

v.

JARELL JONES,
a/k/a Jarrell Koger,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 03-cr-00243)
District Judge:  Honorable Michael M. Baylson

_____

Argued September 22, 2005

Before:  ROTH, McKEE and FISHER, *Circuit Judges*.

(Filed November 22, 2005)

Dennis J. Cogan (Argued)
Cogan, Petrone & Associates
2000 Market Street, Suite 2925
Philadelphia, PA  19103
        *Attorney for Appellant*

Andrea B. Grace (Argued)
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
        *Attorney for Appellee*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Defendant Jarrell Jones ("Jones") appeals from the District Court's judgment of conviction and sentence. The basis for Jones's appeal is the District Court's denial of his motion to suppress certain evidence seized from his apartment at 533 Dickinson Street, Philadelphia. We believe that exigent circumstances justified the search of Jones's apartment, and that the District Court properly denied Jones's motion to suppress. Therefore, we will affirm the District Court's judgment of conviction and sentence.

I.

As we write only for the parties, we set forth only those facts necessary to our analysis. On August 19, 2001, officers of the Philadelphia Police Department obtained an arrest warrant for Felix Summers. Summers was the lead suspect in several murders in the South Philadelphia area. One of the victims was a witness against Summers in a pending homicide case. As a result of their awareness of these murders, the officers believed that Summers was extremely violent, had access to firearms, and had experience in the use of firearms.

Prior to August 22, 2001, Philadelphia police officers had unsuccessfully attempted to execute the arrest warrant for Summers at two known addresses. These

addresses were in the immediate vicinity of 533 Dickinson Street.  Police had information

that Summers was dealing drugs in that same area.

At approximately 6:00 p.m. on August 22, 2001, Detective Michael Gross of the

Philadelphia Police Department answered a telephone call from an anonymous female.

The caller dialed the number released to the press as a hotline for tips regarding the

whereabouts of Summers.[1]  The woman stated that Summers was inside 533 Dickinson

Street, second floor, at the time of the call.  When Detective Gross attempted to obtain

more information from the caller, she hung up.  Detective Gross then notified Detective

Gerald Lynch, who was investigating the murders in which Summers was a suspect.  The

officers did not obtain a search warrant for 533 Dickinson, but instead proceeded with

only the arrest warrant for Summers.  The officers had a fear for their own safety and the

safety of the neighborhood due to the violent nature of the murders in which Summers

was a suspect.

Upon their arrival at 533 Dickinson, the officers rang the doorbell of the first floor

apartment.  A male and a female answered the door, and officers questioned them

regarding Summers.  The answers to these questions and gestures from the residents

confirmed that it was likely that Summers was present in the upstairs apartment.

---

[1]The Philadelphia Police Department published the fact that Summers was wanted
in print and television media.  Based on these publications and based on previous
attempts to locate him, the officers believed that Summers would know he was wanted for
murder.

Based on this information, the officers proceeded to the second floor apartment. Upon reaching the door of the apartment, the officers heard a slight noise coming from inside.[2] The officers then knocked and announced themselves as police officers. Within about thirty seconds, the officers heard someone running. The officers believed that this running came from inside the second floor apartment. Approximately one or two minutes later, the officers were able to enter the apartment forcibly by using a fire extinguisher as a battering ram.

While searching the apartment for Summers, the officers saw drugs in plain view. The officers left and obtained a search warrant for the premises. During the search, the officers found cocaine, handguns, and currency. The total weight of the seized cocaine was over 200 grams. The officers also found a lease agreement and insurance policies in the name of Jarrell Jones. The officers did not find anything during the search that linked the apartment to Summers. Based upon this evidence, the police secured an arrest warrant for Jones.

Almost nine months later, on June 4, 2002, officers of the Philadelphia Police Department were engaged in surveillance of a high drug trafficking area near 533 Dickinson Street. The officers testified at the suppression hearing that drugs are typically sold in South Philadelphia using what are known as "delivery services." Buyers have

---

[2]The officers later discovered that this noise was the television, which was on even though no one was inside the apartment.

4

certain cell phone numbers that they call to tell suppliers what they want to purchase. A short time later, the supplier pulls into a previously discussed location, and the buyer gets into the supplier's vehicle. The supplier and buyer then make the exchange.

The officers were traveling on 11th Street in South Philadelphia when they observed an unknown female make a call from a pay phone. The officers had on at least three to five previous occasions witnessed drug buyers use that pay phone to call the delivery services. A short time later, a Lexus picked up the woman and drove a short distance. Officers pulled their unmarked car in front of the Lexus, blocking the lane of travel. The unmarked police car was approximately forty to fifty feet in front of the Lexus. At this time, one officer began approaching the vehicle. The driver then exited the vehicle, dropping a clear plastic baggie. The baggie contained forty-eight small packets of crack cocaine and two larger chunks of crack cocaine. The total weight of the crack was nineteen grams.

Prior to the female getting into the vehicle, the officers had identified the driver of the Lexus as Jarrell Jones. The officers knew that there were several bench warrants for the arrest of Jones, and intended to stop Jones based on these bench warrants. The officers testified, however, that they had not detained Jones prior to the time he dropped the bag containing the narcotics.

On April 9, 2003, a grand jury sitting in the Eastern District of Pennsylvania returned a seven-count indictment charging Jones with possession with the intent to

distribute more than 50 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) [Count 1]; possession with the intent to distribute more than 50 grams of cocaine base within 1000 feet of a school in violation of 21 U.S.C. § 860 [Count 2]; possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C) [Count 3]; possession with the intent to distribute cocaine within 1,000 feet of a school in violation of 21 U.S.C. § 860 [Count 4]; possession of a firearm in furtherance of a drug trafficking crime [Count 5]; possession with the intent to distribute more than 5 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) [Count 6]; and possession with the intent to distribute more than 5 grams of cocaine base within 1000 feet of a school in violation of 21 U.S.C. § 860 [Count 7].

Counts one through five of the indictment were based upon the evidence discovered during the August 22, 2001 search of defendant's apartment. Counts six and seven arose out of the incident that occurred on June 4, 2002.

Jones filed a motion to suppress the evidence discovered during the search of his apartment.[3] The District Court denied the motion on October 9, 2003, concluding that the officers had: (1) a reasonable belief that Summers was occupying 533 Dickinson Street; and (2) a reasonable belief that he was present at the time of the entry. The court further concluded that the search was justified by exigent circumstances.

_____

[3]Although Jones initially sought to suppress the evidence seized on June 4, 2002, as well, he later withdrew his challenge to that seizure.

6

On January 16, 2004, a jury convicted Jones on counts six and seven.[4] At the sentencing hearing, Jones was sentenced to 115 months imprisonment, 120 months supervised release, a $200 special assessment, and a $1,000 fine. This timely appeal followed.

## II.

We review a District Court's denial of a motion to suppress for clear error as to the underlying facts, and exercise plenary review of the District Court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). A factual finding is clear error if it is not supported by the record. *Cooper v. Tard*, 855 F.2d 125, 126 (3d Cir. 1988). We may affirm the denial of a suppression motion on any ground supported by the record. *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005).

## III.

The police did not obtain a search warrant in this case. However, a warrantless entry into a person's home will not violate the Fourth Amendment if it is supported by exigent circumstances. *See Estate of Smith v. Marasco*, 318 F.3d 497, 518 (3d Cir. 2003) (citing *Payton v. New York*, 445 U.S. 573, 590 (1980)).

In determining whether exigent circumstances existed, we must review "the facts and reasonably discoverable information available to the officers at the time they took

---

[4]The jury deadlocked on counts one through five. At the time of sentencing, counts one through five were dismissed upon motion of the United States.

their actions and in making this determination consider the totality of the circumstances facing them." *Estate of Smith v. Marasco*, 318 F.3d at 518. We have identified certain factors as relevant to an analysis of exigent circumstances. Among these factors are: (1) that a grave offense has been committed; (2) that the suspect sought is reasonably believed armed; (3) that a strong reason exists to believe that the suspect is on the premises; and (4) a likelihood that the suspect might escape if not caught quickly. *Government of Virgin Islands v. Gereau*, 502 F.2d 914, 928 (3d Cir. 1974).

A review of the evidence presented to the District Court demonstrates that the District Court did not err in finding that the August 22, 2001 search was supported by exigent circumstances. First, the District Court made a factual finding that the officers involved in the search of Jones's residence were aware that Summers was the lead suspect in a series of gruesome murders in the Philadelphia area. The court's finding is supported by the detectives' lengthy testimony that they were aware of the crimes allegedly committed by Summers. Second, there is evidence in the record to support the District Court's finding that "Summers was also believed to be experienced in the use of firearms and had access to firearms." Third, the District Court found that the police had a strong belief that Felix Summers was inside the second floor apartment at 533 Dickinson Street. The District Court based this finding upon the anonymous tip received by the police that Summers was at the apartment, the confirmation from the residents of the first floor apartment, the fact that the officers had previously attempted to arrest Summers in the

8

area, and the noises coming from inside the apartment. Finally, the District Court found that the officers reasonably believed that Summers would escape if not apprehended quickly. Summers had a reputation for evading arrest, and he was aware that he was wanted for murder. The officers were aware that fugitives in serious cases would not remain indefinitely at any one location. The officers heard footsteps that they believed came from inside the apartment. These sounds were consistent with someone trying to flee. Based upon the evidence presented at the suppression hearing, the District Court's findings relevant to exigent circumstances are not clearly erroneous.

In addition to the above findings, the District Court determined that the police had a reasonable fear for their own safety and the safety of the neighborhood in which they would make any attempt to arrest Felix Summers. The District Court stated that it was "highly plausible that the investigating officers, considering the gruesome crimes of which Summers stood accused, reasonably, yet incorrectly, deduced that Summers was preparing to defend himself violently at whatever cost." Danger to either law enforcement or the general public is highly relevant in determining if there were exigent circumstances. *Warden v. Hayden*, 387 U.S. 294, 298-299 (1967).

The factual scenario in this case is remarkably similar to *Government of Virgin Islands v. Gereau*. In *Gereau*, the police received a tip from a reliable informant that a criminal suspect was at a particular place. The suspect was wanted for such serious crimes as murder, assault, and robbery. The police had a belief that the suspect would not

tarry long in any place accessible to police, a belief that he had committed these serious offenses, and a belief that the suspect was heavily armed and ready to resist arrest. *Gereau*, 502 F.2d at 928, 929. Based on these facts, it was imperative that the police move quickly, without waiting for a search warrant, to arrest the suspect. We therefore found that exigent circumstances were present. *Id.*

Jones argues that there could not possibly have been exigent circumstances because no one was in fact inside the apartment. This argument ignores all relevant Fourth Amendment precedent. In determining whether there are exigent circumstances in a particular case, we must review "the facts and reasonably discoverable information available to the officers at the time they took their actions and in making this determination consider the totality of the circumstances facing them." *Marasco*, 318 F.3d at 518. *See also Maryland v. Garrison*, 480 U.S. 79, 85 (1987); *Hill v. California*, 401 U.S. 797 (1971). The fact that no one was in fact inside the apartment is not dispositive in our determination. Viewing the totality of the facts known to and facing the officers on August 22, 2001, it is clear that there were exigent circumstances that justified the warrantless search of 533 Dickinson Street.

The search of Jones's residence was justified by the existence of exigent circumstances, and the District Court, therefore, properly denied Jones's motion to

10

suppress.[5]  Accordingly, we will affirm the District Court's judgment of conviction and

sentence.

---

[5]Based on this holding, we need not discuss whether the officers had a reasonable belief that Summers resided at 533 Dickinson Street and a reasonable belief that he was present at the time of the search so as to justify the entry under the *Payton* exception to the search warrant requirement.  *See United States v. Agnew*, 407 F.3d at 196 ("We may affirm the denial of a suppression motion on any ground supported by the record.").