

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2008

# USA v. Porter

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1321

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Porter" (2008). *2008 Decisions.* Paper 1040.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1040

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1321

———

UNITED STATES OF AMERICA

v.

GLENDON PORTER,

*Appellant*

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 05-cr-00648-01)
District Judge: Honorable Cynthia M. Rufe

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 6, 2008

Before: FISHER, JORDAN, and VAN ANTWERPEN, *Circuit Judges*.

(Filed: June 9, 2008)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Glendon Porter entered a conditional guilty plea following the denial of

his motion to suppress. Because the District Court properly denied the motion to

suppress, this Court will affirm the District Court's judgment of conviction and sentence.

I.

Because we write solely for the parties, we will set forth only those facts necessary

to our analysis.

On September 29, 2005, a municipal judge in Philadelphia issued an arrest warrant

for Glendon Porter due to Porter's failure to appear in court on criminal charges arising

out of a shooting in South Philadelphia. On October 14, 2005, Philadelphia Police

Detective Chris Marano and other officers went to Porter's last known address, 1532

North 54th Street, to execute the arrest warrant. Porter's father informed the officers that

Porter no longer lived at that address, and told the officers that Porter currently resided in

the vicinity of 56th Street.

In an effort to locate Porter, Marano contacted a confidential police informant who

was knowledgeable about the 56th Street area in West Philadelphia. A few days after

being contacted, the informant called Marano and told him that Porter could be found at

5515 Hunter Street, residing with a female. In addition, the informant told Marano that if

police found Porter at the location, he would be in possession of a firearm. Marano took

several steps[1] to confirm this information, including driving past the building with the

informant lying in the back seat of an unmarked police vehicle. The informant confirmed

the address, but provided no information concerning the layout of the interior of the

---

[1] Marano also reviewed the Department of Motor Vehicle and voter registration records, but nothing in the records he reviewed showed that 5515 Hunter Street had multiple residences. *App.* at 147-48.

2

building.

On October 19, 2005, Marano submitted an affidavit of probable cause in state court and an application for a search warrant for 5515 Hunter Street. The affidavit stated that the informant was knowledgeable about the area and had provided information in the past leading to arrests and to the recovery of a firearm, drugs, and stolen goods. *App.* at 251. The affidavit also stated that it was Marano's belief that the confidential informant's "information is accurate and reliable, based in personal knowledge and observation." *Id.* On the basis of the affidavit, a search warrant was issued for 5515 Hunter Street, describing the location to be searched as a "three story brick and masonry construction with the addres [sic] clearly marked." *Id.* at 250.

At approximately 6:30 a.m. on October 20, 2005, at least ten members of the Violent Crime Impact Team ("VCIT"),[2] including Marano, arrived at 5515 Hunter Street. Several VCIT members positioned themselves at the rear of the house to prevent escape, while Marano and the other VCIT members approached the front door. Marano and others failed to notice an intercom box on the outside of the residence with three rectangular buttons on it. Marano knocked on the front door and announced the presence of the officers, informing the residents of the search warrant. A woman responded to the knocking, and Marano told the woman through the window that the officers were there to execute the search warrant. The woman opened the front door and the officers entered.

---

[2] VCIT is a combination of city and federal law enforcement officers working collectively to investigate gun crimes in Philadelphia.

Upon entering the common hallway area, the officers realized for the first time that 5515 Hunter Street is not a single family home, but a three-unit apartment building.

Once inside, Marano again informed the woman of the search warrant and told her that they were looking for Porter. The woman stated that she did not know Porter and the woman consented to a search of her apartment. The officers searched her apartment and found nothing. The officers then proceeded up the lone staircase in the common area to the second floor, where they observed two closed doors – Apartment B and Apartment C. Marano instructed the officers to knock on both apartment doors, announce their presence, and inform the residents of the search warrant.

No one responded to the knocking on the door to Apartment B, but a woman opened the door to Apartment C. Marano told the woman that the officers had a search warrant and that they were looking for Porter. The woman looked back inside the apartment, gestured to the rear with her arm, and fully opened the door to let the officers inside. The officers entered, proceeded to the bedroom in the rear, and observed Porter under the bed. After Porter refused to come out, Marano lifted the bed frame, and Porter sprang to his feet and tried to escape. The officers took Porter into custody, and observed a fully-loaded ten millimeter semi-automatic pistol sitting on a shelf in the bedroom closet. The police conducted no further search of the building. Porter was later read his *Miranda* rights, and he made incriminating statements to the officers.

Porter moved to have the firearm and his statements suppressed. The District Court denied this motion on July 13, 2006. First, the District Court stated that the search

4

warrant was supported by probable cause. Second, the District Court concluded that the mistaken belief that the residence was a single family dwelling did not invalidate the otherwise valid warrant, because Marano had exercised reasonable diligence in investigating the residence. Finally, the District Court concluded that the officers did not execute the warrant illegally after realizing the building contained more than one apartment unit. Porter then pleaded guilty to unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), while preserving the right to appellate review of the District Court's suppression ruling. On January 26, 2007, the District Court imposed a term of imprisonment of 30 months. Porter timely appealed.

## II.

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Notice of appeal was timely filed.

This Court "review[s] the denial of a suppression motion for clear error as to the underlying facts, but exercise[s] plenary review as to its legality in light of the court's properly found facts." *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005). This Court can affirm the denial of the suppression motion on any ground supported by the record. *Id.*

## III.

Although the District Court denied the motion to suppress based upon the authority of the search warrant, this Court will affirm the denial of the motion to suppress on the

5

authority of the lawfully obtained arrest warrant. The Supreme Court has stated that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). After the woman gestured, the officers had reason to believe[3] that Porter was currently within Apartment C and we will affirm.

The officers had probable cause to believe Porter was present inside the building at 5515 Hunter Street when they arrived. First, Marano was told by Porter's father that Porter was residing "somewhere up around 56th street." *App.* at 251. After receiving this tip, Marano affirmatively contacted a confidential informant that Marano had used successfully in the past, and the confidential informant provided Marano with information that Porter was residing at 5515 Hunter Street. The confidential informant then

---

[3] The Court in *Agnew* cited *Payton* as requiring a showing of probable cause before police may enter a dwelling in which a suspect is believed to be located. *Agnew*, 407 F.3d at 196. However, the express language of the Supreme Court in *Payton* was that there need only be "reason to believe" the suspect is within. *Payton*, 445 U.S. at 603. Obviously, this Court cannot change what the Supreme Court said and the Court in *Agnew* gave no explanation for citing *Payton* as requiring probable cause. We believe the reference to *Payton* as requiring a showing of probable cause was an error. This Court in *United States v. Veal*, 453 F.3d 164, 167 n.3 (2006), recognized this potential error but, having found that the probable cause standard was met in that case, declined to further address the issue. Because this Court concludes that when they entered the police had both reason to believe and probable cause to believe that Porter was within Apartment C, we need not comment further.

Other courts have held that probable cause is a more stringent standard. *See, e.g., United States v. Route*, 104 F.3d 59, 62 (5th Cir. 1997); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995) (noting that *Payton* requires only a "reasonable belief," which is a less stringent standard).

6

accompanied Marano in an undercover police vehicle and made a first-hand identification of the building. As Marano stated in the affidavit, Marano had ample reason to trust the confidential informant due to Marano's positive past experiences with this particular informant, and Marano also stated that the confidential informant's information was "based in personal knowledge and observation." *Id.* at 251. Although Porter argues that Marano's efforts at corroboration were insufficient, this Court concludes that Porter's father's statement sufficiently corroborated this confidential tip. Therefore, this Court agrees with the District Court that Marano and the other officers had probable cause to believe Porter was currently within 5515 Hunter Street on the morning of October 20, 2005.

Upon being let inside the common areas of the building at 5515 Hunter Street by a resident of the downstairs apartment, the officers learned that there were three separate residences. After determining that Porter was not currently within the downstairs apartment, the officers proceeded upstairs via the common staircase to determine if Porter was currently within one of the upstairs apartments. At this point, even if Porter was entitled to Fourth Amendment protection in the apartment he was in, those rights were not implicated, because Porter had no expectation of privacy in the hallways and common areas. *See United States v. Acosta*, 965 F.2d 1248, 1252 (3d Cir. 1992) ("[O]nly when the defendant has the right to keep a place private and subject to his exclusive control would reasonable expectations of privacy attach.").

Following Marano's directions, the officers knocked on both doors and announced

7

their presence and purpose. When a woman inside Apartment C responded to the knocking and opened the door, Marano stated that the officers had a search warrant and were looking for Porter. As soon as the woman gestured to the back of the apartment and fully opened the door, the officers clearly had probable cause to believe Porter was currently within that apartment, justifying their entry to execute the arrest warrant. Because the officers were lawfully present in Apartment C under the authority of *Payton*, the firearm was properly seized because it was in plain view. *See Horton v. California*, 496 U.S. 128, 136-37 (1990). Because there were no constitutional violations during the course of making the arrest, the incriminating statements were also properly determined to be admissible.

## IV.

We have considered all other arguments made by the parties, and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence.