NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4304
_____

UNITED STATES OF AMERICA

v.

JONATHAN COBB, a/k/a JC


JONATHAN COBB,
Appellant
_____

No. 10-4305
_____

UNITED STATES OF AMERICA

v.

DAVID COBB, a/k/a Sweat


DAVID COBB,
Appellant
_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Nos. 2:09-cr-00733-001 & 2:09-cr-00733-002)
District Judge:  Honorable Eduardo C. Robreno

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 22, 2012
_____

Before: RENDELL, FISHER and CHAGARES, Circuit Judges.

(Filed: May 25, 2012)

_____

OPINION

_____

CHAGARES, Circuit Judge.

David Cobb and Jonathan Cobb challenge their respective convictions related to their participation in a cocaine distribution scheme, alleging that the District Court erred by admitting conversations captured on an illegal wiretap, failing to exclude evidence seized during the warrantless search of David Cobb's vehicle, and allowing inappropriate expert testimony under Federal Rule of Evidence 702. David Cobb also challenges the District Court's admission of his prior convictions, and Jonathan Cobb contends that the District Court's upward variance at his sentencing renders his sentence unreasonable. We will affirm in all respects.

I.

Because we write exclusively for the parties, we provide only an abbreviated summary of the facts essential to our disposition. On November 18, 2009, a grand jury returned a two-count indictment charging brothers David and Jonathan Cobb with conspiracy to possess with intent to distribute 500 grams or more of cocaine and possession of cocaine with intent to distribute, both in violation of 21 U.S.C. § 841(b)(1)(B)(ii). These charges arose from the Cobbs' participation as middlemen in a

cocaine distribution enterprise in Delaware County, Pennsylvania, which law enforcement authorities began investigating in March 2008.

As part of its investigation, authorities sought to obtain a wiretap for Jonathan Cobb's mobile phone pursuant to 18 U.S.C. § 2518. In support of its application for a wiretap, the Government submitted a 64-page affidavit from FBI Special Agent Luke Church detailing the nature and scope of the investigation of the Cobbs' drug dealing activities. Appendix ("App.") 54-117.[1] The necessity section of this affidavit, which spanned eight pages, stated that "interception of wire communications over [Jonathan Cobb's mobile phone] is the only available technique with a reasonable likelihood of identifying the full scope of this conspiracy" given the insular nature of the enterprise and the Cobbs' efforts to evade police surveillance. Id. at 106-14. In support of this assertion, Agent Church explained that the use of undercover agents and additional confidential informants was dangerous and unlikely to lead to additional relevant information, given that the Cobbs "are very cautious and normally deal only with persons who have had a close relationship with one or more members of the organization" and none of the confidential informants were in a position to provide information about the Cobbs' suppliers. Id. at 108-09. Agent Church further averred that physical surveillance had been difficult because Jonathan Cobb actively sought to avoid detection, including using rental cars and monitoring the cars outside his home. Id. at 110-11. Other forms of investigation were likewise problematic because they would make the Cobbs aware of the

---

[1] Jonathan and David Cobb filed separate appendices containing the same relevant documents. For convenience, all citations to the "Appendix" refer to the appendix filed by Jonathan Cobb.

ongoing investigation and thus cause the Cobbs to "become more circumspect in their dealings." Id. at 113.

Based on the information contained in Agent Church's affidavit, on September 29, 2009, the District Court authorized a 30-day wiretap of Jonathan Cobb's mobile phone. The evidence obtained through the wiretap included conversations in which Jonathan Cobb orchestrated the buying and selling of cocaine and warned his co-conspirators about police surveillance. On October 20, 2009, agents overheard a conversation that led them to believe Jonathan and David Cobb were planning to obtain a large quantity of cocaine that evening. Id. at 146. Based on surveillance indicating the Cobbs had met with their supplier, police stopped each of their respective cars on an exit ramp off an interstate. Id. at 194-223. After an officer ordered David Cobb to put his hands up, the officer observed David Cobb lean down with both hands "down below the seat area" of the car. Id. at 224. David Cobb eventually complied, and the same police officer drove David Cobb's vehicle to a nearby parking lot. Id. at 224-25. While driving, the officer noticed a shopping bag under the passenger seat, which he later discovered contained a 997-gram brick of cocaine. Id. at 225.

Both sides filed pretrial motions. The Government sought to introduce recordings obtained during the wiretap of Jonathan Cobb's mobile phone and evidence of prior criminal conduct pursuant to Federal Rule of Evidence 404(b) and 609. The Cobbs opposed these motions (either by argument or by brief) and filed a motion to suppress evidence seized from the warrantless search of David Cobb's vehicle. On June 15, 2010,

4

the District Court granted the motion to admit wiretap evidence and partially granted the Government's motion to admit evidence under Rule 404(b).

Following a seven-day trial, on June 28, 2010, a jury found Jonathan and David Cobb guilty of both counts.[2] On November 3, 2010, David Cobb was sentenced to a term of 288 months of imprisonment, eight years of supervised release, and a $1,500 fine. Two days later, Jonathan Cobb was sentenced to an identical period of imprisonment and supervised release, along with a $2,500 fine.

## II.

### A.

The Cobbs first contend that the wiretap of Jonathan Cobb's phone was improper because Agent Church's affidavit failed to demonstrate the required necessity to secure a wiretap. "We review de novo the question of whether a full and complete statement of necessity for a wiretap was made in the application. Once it is determined that the statement was made, we will review the court's determination of necessity for an abuse of discretion." United States v. Phillips, 959 F.2d 1187, 1189 (3d Cir. 1992).[3]

To demonstrate necessity, the Government must provide an affidavit containing "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be

[2] A third co-defendant was found not guilty on both counts.
[3] Because David Cobb did not join Jonathan Cobb's pretrial motion to bar wiretap evidence, the Government asserts that we should apply plain error review. Gov't Br. 36 n.4. David Cobb responds that he did join in the objection at trial. Because we hold that the District Court did not abuse its discretion in admitting the wiretap evidence, we need not decide whether David Cobb properly raised an objection to this evidence.

too dangerous[.]" 18 U.S.C. § 2518(1)(c). After evaluating this affidavit, a court may only grant an application for a wiretap if it finds that "normal investigative procedures" have failed, or such procedures are too dangerous or are unlikely to succeed. Id. § 2518(3)(c). These necessity provisions were "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Kahn, 415 U.S. 143, 153 n.12 (1974). However, "courts have consistently held that 18 U.S.C. § 2518(3)(c) does not require the government to exhaust all other investigative procedures before resorting to electronic surveillance." United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997). Rather, the "government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient." Id. (quoting United States v. McGlory, 968 F.2d 309, 345 (3d Cir. 1992)).

Review of the affidavit submitted by Agent Church compels us to conclude that the wiretap application contained sufficient factual information to demonstrate why other methods of investigation were inadequate. Specifically, Agent Church explained that the drug dealing conspiracy took great care to conceal its activities, especially insofar as members of the conspiracy refused to engage in transactions with unknown persons and took affirmative steps to thwart police surveillance. App. 108-13. Thus, we find that the District Court did not abuse its discretion by determining that the wiretap was warranted.[4]

---

[4]  David Cobb also argues that the wiretap was improper because Agent Church's affidavit did not establish probable cause that "particular communications concerning" a narcotics-related offense would be captured through a wiretap, as required by 18 U.S.C. § 2518(3). There is extensive evidence in the affidavit that Jonathan Cobb used his mobile

B.

The Cobbs next argue that the District Court erred by failing to suppress evidence of the cocaine found in the automobile driven by David Cobb. "[W]e review the denial of a suppression motion for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005).

Although the Fourth Amendment generally requires police to secure a warrant before conducting a search, the longstanding "automobile exception" to the warrant requirement allows police to search a vehicle so long as there is "probable cause to believe [the] vehicle contains evidence of criminal activity." Arizona v. Gant, 556 U.S. 332, 347 (2009). Thus, when there is probable cause to search a vehicle, the search "is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." United States v. Ross, 456 U.S. 798, 809 (1982). This type of automobile search may extend to "any area of the vehicle in which the evidence might be found." Gant, 556 U.S. at 347.

Accordingly, if the police had probable cause to believe drugs or other evidence of the Cobbs' drug dealing conspiracy was present in the vehicle, the search of the vehicle cannot violate the Fourth Amendment. Probable cause is a "fluid concept" that requires a court to analyze the totality of the circumstances to determine whether "there is a fair

---

phone to conduct illegal drug transactions, including a statement from a confidential witness that Jonathan Cobb used his mobile phone for this purpose. See App. 72-73. This argument is plainly without merit.

7

probability that contraband or evidence of a crime will be found in a particular place."
Illinois v. Gates, 462 U.S. 213, 238 (1983).

We have no difficultly concluding that the District Court was correct in finding that police officers had probable cause to believe that evidence of the Cobbs' drug dealing operation was present in the vehicle. By this point, federal and state investigators had collected ample evidence that the Cobbs bought and sold illegal narcotics. The wiretapped conversation between Jonathan Cobb and his supplier led investigators to believe that the Cobbs intended to meet with the supplier to obtain a large amount of cocaine. Law enforcement officers then arranged surveillance, through which they observed the Cobbs meet with the supplier and then drive away. Although the surveillance team briefly lost track of the Cobbs' vehicles during this transaction, they were able to locate them by tracing their cell phones shortly after they believed the transaction occurred. The totality of the evidence here compels us to uphold the District Court's finding that there was probable cause to search David Cobb's vehicle, and thus the District Court did not err by refusing to suppress the evidence found pursuant to that search.

C.

Jonathan Cobb next argues that the District Court erred in allowing Police Officer David Tyler to testify as an expert in the field of coded drug language. We review the

8

admission of expert testimony for abuse of discretion.  United States v. Gibbs, 190 F.3d 188, 211 (3d Cir. 1999).[5]

District courts have broad discretion to determine whether to admit expert testimony so long as such testimony "is helpful to the trier of fact."  Id.  More relevant to the specific circumstances here, "it is well established that experienced government agents may testify to the meaning of coded drug language under Federal Rule of Evidence 702."  Id.  We have explained that "[b]ecause the primary purpose of coded drug language is to conceal the meaning of the conversation from outsiders through deliberate obscurity, drug traffickers' jargon is a specialized body of knowledge and thus an appropriate subject for expert testimony."  Id.

Officer Tyler testified that he had been an officer in the Chester County Police Department for twenty-one years, sixteen of which were spent in the narcotics unit.  App. 320.  During his career, Officer Tyler participated in more than 1,000 drug investigations and received specialized training on the coded language used by drug dealers.  Id. at 299, 314.  Given his lengthy experience with confidential informants and narcotics dealers, Officer Tyler was well-qualified to opine on the meaning of the language used by these defendants.  Moreover, while Jonathan Cobb argues that Officer Tyler's testimony was unhelpful to the jury because he "simply narrate[d] what is being said among the conversant on the intercepted calls," J. Cobb Br. 29, the copious use of slang and jargon

---

[5]  Although the Government suggests that we should review this claim for plain error because the Cobbs did not properly object at trial, the record reveals that counsel for both David and Jonathan Cobb objected to Officer Tyler testifying as an expert witness.  App. 311.

9

by the Cobbs during the wiretapped conversations made Officer Tyler's testimony useful because it enabled the jury to understand what the conversations were about. We also see no error in the District Court's decision to allow Officer Tyler to serve as both an expert witness and a fact witness, given that his testimony as a fact witness was limited to identifying the voices heard during the wiretapped conversations. The District Court therefore did not abuse its discretion by admitting Officer Tyler's testimony.

D.

David Cobb also argues that the District Court erred by allowing the Government to introduce his prior drug convictions under Federal Rule of Evidence 404(b). Our review is plenary when a district court's ruling "requires us to interpret the rules of evidence." United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006). However, we review a district court's decision to admit evidence of prior bad acts under Rule 404(b) for an abuse of discretion so long as "the evidence could have been admissible in some circumstances." Id.

Federal Rule of Evidence 404(b) prohibits the introduction of "[e]vidence of other crimes, wrongs, or acts" for the purpose of "prov[ing] the character of a person in order to show action in conformity therewith." Such evidence may be admitted, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," so long as "the prosecution in a criminal case [provides] reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." Id. Thus, we have held that evidence of other acts may be admitted under Rule 404(b) when it (1) has a proper evidentiary

10

purpose, (2) is relevant under Rule 402, (3) is not substantially more prejudicial than probative as required by Rule 403, and (4) is accompanied by a limiting instruction, when such an instruction is requested. United States v. Cross, 308 F.3d 308, 321 (3d Cir. 2002).

Under these circumstances, the District Court did not abuse its discretion in determining that the admission of David Cobb's two former convictions for possession with intent to deliver cocaine satisfied Rule 404(b). This evidence was relevant for the purpose of showing David Cobb's knowledge and intent with regard to the brick of cocaine discovered in the car he was driving. As we have held in nearly identical circumstances, the District Court did not abuse its discretion by finding that the evidence was not substantially more prejudicial than probative, particularly given that the District Court provided an appropriate limiting instruction. See United States v. Givan, 320 F.3d 452, 461-62 (3d Cir. 2003) (holding that a defendant's prior drug conviction was properly admitted under Rule 404(b) because it was relevant to showing the defendant's intent with regard to the drugs found in his car and the court had issued a proper limiting instruction). Thus, the Rule 404(b) elements are satisfied.

David Cobb argues that, unlike the defendant in United States v. Givan, he did not put his knowledge at issue because he did not testify in his own defense to deny knowing the drugs were in his car. This contention is unavailing because we have held that "[t]he parameters of Rule 404(b) are not set by the defense's theory of the case; they are set by the material issues and facts the government must prove to obtain a conviction." United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992). Because intent was a necessary

11

element of the charges for which David Cobb was on trial, the District Court did not abuse its discretion by admitting this evidence.

## E.

Finally, Jonathan Cobb argues that the District Court erred by granting the Government's motion for an upward variance to give him a sentence significantly higher than the range recommended by the United States Sentencing Guidelines. Review of a sentence imposed by a district court requires us to consider first whether the district court committed any procedural error. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). If no such error occurred, we must then consider the sentence's substantive reasonableness based on the totality of the circumstances. Id. "At both stages of our review, the party challenging the sentence has the burden of demonstrating unreasonableness." Id.

Jonathan Cobb alleges no procedural error, but instead argues that his sentence of 288 months of imprisonment, well above the recommended Guidelines range of 130-162 months, was unreasonable in light of the factors already encompassed in the Guidelines calculation and his "relatively modest criminal record." J. Cobb Br. 32. Given the extensive criminal background described in Jonathan Cobb's Pre-Sentence Investigation Report, which included crimes involving guns and violence, and given the evidence showing Jonathan Cobb was the leader of the conspiracy in this case, he has not satisfied his burden of proving that his sentence is substantively unreasonable.

## III.

For the foregoing reasons, we will affirm the judgments of the District Court.

12