

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-3-2006

# USA v. Veal

Precedential or Non-Precedential: Precedential

Docket No. 05-1612

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Veal" (2006). *2006 Decisions*. Paper 674.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/674

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1612

UNITED STATES OF AMERICA

v.

SAMUEL VEAL
a/k/a
ICE

Samuel Veal,
                    Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 03-cr-00709-1)
District Judge: Honorable Cynthia M. Rufe

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2006

Before: AMBRO and STAPLETON, Circuit Judges,

and STAGG,[*] <u>District Judge</u>

(Opinion filed:   July 3, 2006)

Stuart M. Wilder, Esquire
Pratt, Brett & Luce
68 East Court Street
P.O. Box 659
Doylestown, PA  18901

     Counsel for Appellant

Patrick L. Meehan
  United States Attorney
Robert A. Zauzmer
  Assistant United States Attorney
  Chief of Appeals
Thomas P. Hogan, Jr.
  Assistant United States Attorney
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA   19106

     Counsel for Appellee

_____

OPINION  OF  THE  COURT

_____

[*]Honorable Tom Stagg, Senior District Judge for the Western District of Louisiana, sitting by designation.

2

AMBRO, Circuit Judge

Samual Veal appeals from a judgment and sentence entered by the United States District Court for the Eastern District of Pennsylvania. After the District Court denied his motion to suppress evidence, Veal entered a conditional guilty plea reserving his right to challenge the adverse suppression decision. Veal now challenges the denial of his motion, arguing that the police did not have probable cause to believe that he was located and residing at the residence of his wife; thus his arrest inside that residence was unlawful and the evidence seized cannot be used against him. For the reasons set out below, we affirm the judgment of the District Court.[1]

## I.

In January 2003, two Philadelphia detectives were interviewing the nephew of a murder victim as part of a homicide investigation. The nephew stated that he had been selling drugs supplied by Samuel Veal, and he owed Veal money for drugs. The nephew also gave the detectives a description of Veal's car. When the detectives ran a background check on Veal, they discovered he had two open

---

[1]It had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291, as this is an appeal from a final decision of the District Court.

arrest warrants issued in 2002 – one for, *inter alia*, attempted murder and aggravated assault, and one for a parole violation.

The parole violator warrant was issued by Veal's parole officer, Jerome Coleman, when Coleman learned that Veal was no longer residing with his mother as required by the conditions of his parole. The parole warrant identified Veal's wife, Tina Veal, as a possible lead. On January 6, 2003, the Philadelphia detectives called the Pennsylvania Board of Probation and Parole ("PBPP") to determine if the parole warrant was still valid. PBPP confirmed the validity of the warrant and informed the detectives that Veal no longer resided with his mother. Later that same day the detectives visited several addresses provided by the murder victim's nephew, the PBPP, and police files, in an effort to find Veal. On January 7, 2003, they were able to speak with the owner of a building at one of the addresses, who informed them that Tina and Samuel Veal had previously rented that property but had since moved.

The detectives next conducted a check of Philadelphia Housing Authority records, and discovered that Tina Veal was listed as living at 1848 South Conestoga Street. The detectives went to that address between 3:00 a.m. and 4:00 a.m. on January 8, 2003, and observed a vehicle, described by the nephew of the murder victim as Veal's, parked near the house. A check of the vehicle's registration showed it was registered to Tina Veal. The detectives then prepared a report for the Police Department's Homicide Fugitive Squad that stated, *inter alia*, Veal was

4

wanted on a parole violation and an arrest warrant, and that he was living at 1848 South Conestoga Street. The report requested the Fugitive Squad to make an early morning arrest at that address.

The detectives' report was picked up later that morning by Michael Walter, a member of the Fugitive Squad. At 6:00 a.m., accompanied by two other detectives and uniformed police officers, Walter went to 1848 South Conestoga Street. He confirmed that the vehicle described by the nephew was still in the driveway, and banged on the door of the house. After the officers identified themselves as police and stated they were there to serve a warrant on Veal, Tina Veal opened the door and admitted the officers into the residence.[2] She claimed Veal was

---

[2]Tina Veal testified before the District Court that the officers did not identify themselves as police and that she did not let them in voluntarily. The Court declined to accept this testimony as credible, as it was "riddled with inconsistencies." Although the Court did not list the inconsistencies, our review of the record reveals multiple contradictions. For example, Tina Veal testified at trial that she opened the door, shut it, and the police barged through the unlocked, but closed, door. In her affidavit, however, she stated that the officers stormed into the house "as [she] opened the door." She also testified that she did not see any uniformed police enter the residence but, when challenged, admitted she remembered one particular officer in full uniform. In this factual context, there is no evidence of clear error; thus we uphold the District Court's adverse

not there. However, the officers heard noises from the second floor of the home and went upstairs, where they found Veal under a bed. After Veal requested help in getting out from underneath the bed, Walter lifted it up and Veal, bearing a pistol in each hand, pointed them at Walter and another detective. Walter slammed the bed back down on Veal. This began approximately forty minutes of negotiation that led to Veal's surrender and arrest. The officers thereafter seized evidence from the bedroom, including the two handguns wielded by him.

Veal was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moved to suppress all evidence that was seized by police following the arrest, including the two handguns. The District Court held a suppression hearing and denied the motion. Veal then entered a conditional plea of guilty, reserving his right to challenge the denial of his suppression motion, and was sentenced to 120 months in prison. He filed a timely notice of appeal.

## II.

Veal argues that he had a reasonable expectation of privacy while in his wife's residence in which he was arrested,

---

credibility determination. *See United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005) (we review the denial of a motion to suppress for clear error as to the underlying factual determinations).

and the police did not have probable cause to believe he was residing at and present in the residence.[3] We review the denial of a motion to suppress for clear error as to the underlying

[3]The constitutional standard for home arrests was articulated in *Payton v. New York*, 445 U.S. 573, 603 (1980), where the Supreme Court held that, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton* is not explicit, however, about whether courts should apply a "probable cause" or "reasonable belief" standard to the question of whether a suspect is in the residence, or whether there is a difference between the two. *See* Matthew A. Edwards, *Posner's Pragmatism and* Payton *Home Arrests*, 77 Wash. L. Rev. 299, 362-63 (2002). ("Two possibilities exist when comparing reason to believe with probable cause. First, the two terms may be synonymous. . . . Second[,] . . . reason to believe requires less proof than probable cause."). "Most courts have held that [the] *Payton* reason to believe [standard] requires less proof than probable cause." *Id*. at 363. Our Court, however, has described the test using the language of "probable cause." *See, e.g., Agnew*, 407 F.3d at 196 ("[P]olice may enter a suspect's residence to make an arrest armed only with an arrest warrant if they have *probable cause* to believe that the suspect is in the home."(emphasis added)). As we conclude that the probable cause standard was met, we need not determine whether a possibly lower standard of reasonable belief should be applied here.

7

factual determinations and exercise plenary review over the application of the law to those facts. *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005). We may affirm on any ground supported by the record. *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005).

We do not need to determine whether Veal had a privacy interest in his wife's residence,[4] for, even assuming such an interest, the police had probable cause to believe he was residing at and present in the residence.[5] "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980); *see also United States v.*

---

[4]We note that the home of Veal's wife was not Veal's residence. Although we do not know the status of Veal's relationship with his wife, the record shows that he was required to live with his mother as a condition of his probation.

[5] The Supreme Court has held that an arrest warrant does not carry with it the authority to enter the home of a third person to seize a suspect, and that to enter such a home police need to get a search warrant. *Steagald v. United States*, 451 U.S. 204, 222 (1981). *Steagald*, however, only protects "the interests of the third-party owner of the residence, not the suspect himself, "regardless of whether the suspect has a reasonable expectation of privacy in the home." *Agnew*, 407 F.3d at 196-97.

*Edmonds*, 52 F.3d 1236, 1247 (3d Cir. 1995), *vacated on other grounds*, 80 F.3d 810 (3d Cir. 1996). *Payton* requires that officers have "a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." *United States v. Gay*, 240 F.3d 1222, 1226 (10th Cir. 2001); *see also Edmonds*, 52 F.3d at 1247. To determine whether the police had probable cause to believe a suspect was residing and present in a home, we apply a "common sense approach" and consider "the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality." *United States v. Magluta*, 44 F.3d 1530, 1535, 1536 (11th Cir. 1995).

The following facts (and, where applicable, supporting law in analogous situations) gave the police officers probable cause to believe Veal resided at 1848 South Conestoga Street:[6] (1) the parole violation warrant indicated Veal was no longer living with his mother, and Tina Veal was a possible lead – *see,*

---

[6]For purposes of determining whether a suspect resides at a location pursuant to *Payton* (and as distinct from the determination of a person's Fourth Amendment privacy interest in a residence), he "need not actually live in the [specified] residence, so long as he possesses common authority over, or some other significant relationship to, the residence entered by police." *Gay*, 240 F.3d at 1226 (internal quotation marks and citations omitted).

9

*e.g., United States v. Lovelock*, 170 F.3d 339, 344 (2d Cir. 1999) (relying on probation warrant for evidence that location was defendant's address); (2) the Veals' former landlord reported that Tina and Samuel Veal had lived together in the apartment they rented from him – *see, e.g., Magluta*, 44 F.3d at 1537 (tip from third-party suggested defendant lived at particular location); *Gay*, 240 F.3d at 1227 (same); (3) a car Veal was reported to drive was registered to Tina Veal and was parked near her home – *see, e.g., Magluta*, 44 F.3d at 1537 (noting evidence that defendant was a "frequent visitor to the residence"); and (4) Tina and Samuel Veal were married.

The following facts gave the police officers probable cause to believe that Veal was located in the residence at 1848 South Conestoga Street at the time of arrest: (1) a car Veal was reported to drive was parked nearby at the time of arrest – *see, e.g., Edmonds*, 52 F.3d at 1248 (noting car connected to defendant was parked in front of residence); *United States v. Boyd*, 180 F.3d 967, 978 (8th Cir. 1999) (noting car matching description of car driven by suspect parked outside of girlfriend's residence)*; Magluta*, 44 F.3d at 1538 ("The presence of a vehicle connected to a suspect is sufficient to create the inference that the suspect is at home."); (2) the officers arrived early in the morning, when it was reasonable to expect that residents or guests would still be present – *see, e.g., Edmonds*, 52 F.3d at 1248 (noting at 6:45 a.m. it was "early enough that it was unlikely someone living in the apartment would have already departed for the day"); *Magluta*, 44 F.3d at 1535 (stating

10

that officers may presume a person is home at certain times of day) *United States v. Terry*, 702 F.2d 299, 319 (2d Cir. 1983) (8:45 a.m. was "a time when [the officers] could reasonably believe that [the defendant] would be home"); (3) while in the living room of the residence, the officers heard unexplained noises upstairs – *see, e.g., Gay*, 240 F.3d at 1227 (noting that noise inside apartment suggested to officer that someone was inside); and (4) the officers were aware Veal was a fugitive who might be attempting to conceal his location – *see id.* at 1227 (finding that police may consider that person involved in criminal activity may be attempting to conceal his whereabouts); *Magluta*, 44 F.3d at 1538 ("officers were entitled to consider that [the defendant] was a fugitive from justice . . . who might have been concealing his presence").

When we consider, using a common sense approach, the totality of the facts and circumstances known to the officers, we hold that they had probable cause to believe both that Veal resided at 1848 South Conestoga Street, and he was actually there at the time of his arrest. Therefore, on the record before us, the arrest of Veal was lawful and the evidence seized pursuant to the arrest was properly admitted into evidence.

\* \* \* \* \*

We conclude that Veal's motion to suppress evidence was properly denied, and we affirm the judgment of the District Court.

11