

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2009

# USA v. Rosario

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4814

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Rosario" (2009). *2009 Decisions.* Paper 2024.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2024

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-4814

———

UNITED STATES OF AMERICA

v.

CARLOS ROSARIO,

*Appellant*

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 05-437)
District Court Judge: Honorable Robert B. Kugler

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 6, 2009

Before: FUENTES and FISHER, *Circuit Judges*, and PADOVA,*
*District Judge*

(Filed:  January 15, 2009)

———

OPINION OF THE COURT

———

_____

*The Honorable John R. Padova, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

PADOVA, *Senior District Judge.*

Carlos Rosario appeals from his conviction on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Following the denial of his pre-trial motion to suppress the firearm, Rosario entered a conditional guilty plea preserving the suppression issue. He is currently serving a sentence of 33 months imprisonment. We have jurisdiction over his appeal pursuant to 28 U.S.C. § 1291. We affirm the conviction.

I.

In Spring 2005, the Drug Enforcement Administration Mobile Enforcement Team ("DEA") was deployed to Camden, New Jersey to focus law enforcement efforts on mid-level narcotics dealers in the area. Information led DEA agents to investigate Carlos Rosario. During the course of the investigation, the DEA learned of an outstanding arrest warrant for Rosario issued by the Camden municipal court. The warrant was in the name of "Carlos Santana," one of Rosario's confirmed aliases.[*] The DEA, in conjunction with the New Jersey State Police ("NJSP"), arranged for two NJSP Troopers, Reitz and Crain, to perform a motor vehicle stop on Rosario's car in order to plant a tracking device in the car as an investigative tool.

Prior to arranging the directed stop, the DEA knew that the "Santana" warrant contained the unique State Bureau of Investigation ("SBI") number assigned to Rosario; Rosario's criminal history records indicated that he used the alias "Carlos Santana;" the date

---

[*]The "Santana" warrant was issued in 1996. Rosario had been arrested in Camden County in 2000, and was not connected to the Santana warrant prior to the DEA investigation.

of birth listed for Santana in the Santana criminal history record was only one digit different than that listed for Rosario; and the address listed for Santana in his criminal history record was the same address listed for Rosario in his criminal history record.[**]

The directed stop occurred on the night of April 8, 2005. Rosario, who was under continuous DEA surveillance, was seen by agents as he left a bar in Philadelphia. The agents radioed a description of Rosario's vehicle to the NJSP Troopers, who spotted the black BMW 7 series sedan exiting the Ben Franklin Bridge. The Troopers initiated the vehicle stop based upon their knowledge of the active warrant.[***] Reitz first became aware of the existence of the warrant from the information he received from a NJSP detective working with the DEA. That information indicated that the warrant was in the name of Carlos Santana and that Rosario used that name as an alias. In addition, Reitz saw the actual warrant prior to the stop. The warrant, however, did not in any way refer to the name Carlos Rosario, nor did it contain a description of the race, gender, eye color, hair color, weight or height of the individual named in the warrant. Reitz testified in response to questions from the District Court that he was additionally acting on good faith reliance that the information he received about Rosario/Santana from the NJSP detective and the DEA agents was good information.

---

[**]While the actual warrant contained a different address, the vehicle documents Rosario produced on the night of his arrest listed the same address contained in the Rosario and Santana criminal history records.

[***]Trooper Reitz testified that he had an additional reason for stopping the vehicle, namely that he observed the driver speeding. According to Reitz, he used radar to determine Rosario's speed, but could not remember how fast he had clocked the vehicle and his written report does not record that a radar device was employed.

Because the purpose of the directed stop was to plant the tracking device, Trooper Reitz testified that the authorities did not wish to disclose the existence of the outstanding warrant. Reitz admitted that, prior to initiating the stop, it was his intention to place Rosario under physical arrest for "something," in order to take him out of the car and plant the tracking device. However, he knew that a mere speeding violation was insufficient cause to remove Rosario from the vehicle. Because Rosario passed a field sobriety test, the only probable cause Reitz had to effectuate the arrest was the outstanding warrant, and he arrested Rosario on that ground. A subsequent search of Rosario led to the discovery of a firearm in his waistband.

Reitz wrote a report of the arrest. He admitted that he purposefully included incorrect information in the report and omitted other information in order to hide the fact that the arrest was made in order to plant the tracking device. Specifically, the report does not mention that Reitz was aware of the warrant prior to stopping Rosario. Reitz wrote in the report that he conducted a computer check on Rosario from his vehicle, discovered the outstanding warrant, and arrested Rosario on that basis, when Reitz in fact knew of the warrant before initiating the stop. Reitz admitted that he intentionally wrote the report in this manner after discussing the matter with the DEA agents because they did not want Rosario or his attorney to know that the authorities were targeting Rosario, in order to protect the confidentiality of the ongoing investigation. Reitz testified that he believed it was permissible to misrepresent facts in a police report for this purpose.

In deciding Rosario's motion to suppress the firearm, the District Court held that

Rosario's arrest was lawful because the DEA agents had probable cause to arrest Rosario and the arresting Troopers acted on the basis of the request made of them by the detective that was working with the DEA. The District Court noted that Rosario had not contested the validity of the "Santana" arrest warrant; rather he contended in his suppression motion that the warrant only authorized the arrest of "Santana" and law enforcement improperly connected him with the Santana alias by relying on statements made by the NJSP detective that were not grounded in probable cause. The District Court rejected this argument, finding as fact that the Government had,

> successfully established that Rosario and Santana are the same person. The DEA examined Rosario's official criminal history and revealed that his only recorded alias was "Carlos Santana." Further the DEA coordinated with a State Police detective and matched the SBI numbers listed on the 1996 Santana warrant with the State Police's SBI number for Carlos Rosario.
>
> Based on the record, the DEA possessed the requisite probable cause to authorize the execution of the 1996 warrant. The detective working with the DEA communicated with the troopers and informed them that criminal history checks linked the Rosario and Santana names for purposes of the warrant. Further, the officers contacted the State Police barracks from the police vehicle and confirmed the existence of the warrant before executing it. Finally, after making the arrest and seizing the handgun, the troopers confirmed that Rosario was in fact the person identified on the warrant by matching Rosario's State Police SBI number and the SBI number listed on the warrant. Based on these facts, the arrest of Rosario and the subsequent search and seizure of the handgun were not unconstitutional.

II.

In reviewing a suppression order, "we exercise plenary review over the District Court's legal conclusions, and we review the underlying factual findings for clear error." United States v. Laville, 480 F.3d 187, 190-91 (3d Cir. 2007) (citing United States v. Delfin-Colina, 464 F.3d 392, 395-96 (3d Cir. 2006), and United States v. Veal, 453 F.3d

164, 167 (3d Cir. 2006)). We may affirm on any ground supported by the record. Id. (citing United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005)).

III.

Rosario argues that the District Court erred in denying the suppression motion because the Trooper had no probable cause to: 1) stop Rosario's vehicle for the ruse traffic infraction; and 2) connect Rosario to the Santana warrant. We disagree. Based upon the facts found by the District Court, the Government established probable cause to stop the vehicle to execute the Santana arrest warrant. Thus, any alleged defect in the traffic stop and efforts by law enforcement to keep the drug investigation confidential is immaterial.

To determine whether the police have probable cause to believe a particular suspect is the person named in a warrant, "we apply a common sense approach and consider the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality." Veal, 453 F.3d at 167-68 (internal quotations omitted) (addressing issue of whether police had probable cause to enter residence/believe suspect was in the residence); see also United States v. Glover, 725 F.2d 120, 122 (D.C. Cir. 1984) (holding that "the arrest of a person who is mistakenly thought to be someone else is valid if the arresting officer (a) has probable cause to arrest the person sought, and (b) reasonably believed the person arrested was the person sought" (citing Hill v. California, 401 U.S. 797, 802 (1971))).

The Government established that, at the time of the directed stop, Reitz had probable cause to believe that a valid arrest warrant existed for Santana, Rosario and Santana were the same person, and Rosario was the person in the vehicle. This alone was sufficient to

establish probable cause to support the directed stop of Rosario's vehicle. As the stop of the vehicle and subsequent arrest were supported by probable cause, the weapon found during the search of Rosario's person incident to the lawful arrest was correctly deemed admissible. Because the "Santana" warrant gave Trooper Reitz probable cause to stop the vehicle, even if no traffic offense had occurred, Rosario's argument that the ruse traffic stop of his vehicle was unsupported by probable cause, and his reliance on the falsities in the police report, are meritless.

## IV.

For the foregoing reasons, we will affirm the District Court's Order of Judgment and Conviction.