**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 10-1301

———————

SHELLY ULITCHNEY,

Appellant.

v.

JEFF RUZICKI; MARK MALLOY;
JOHN DOES 1-5

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 3-07-cv-02189)
District Judge:  Hon. Malachy E. Mannion

———————

Argued on November 2, 2010

Before:  SCIRICA, STAPLETON and ROTH, Circuit Judges

(Opinion filed  January 5, 2011)

Barry H. Dyller, Esquire  **(Argued)**
Shelley L. Centini, Esquire
Dyller Law Firm
Gettysburg House
83 North Franklin Street
Wilkes-Barre, PA   187801

Counsel for Appellant

1

Thomas W. Corbett, Jr.
Attorney General
J. Bart DeLone, Esquire  **(Argued)**
Senior Deputy Attorney General
Calvin R. Koons, Esquire
Senior Deputy Attorney General
John G. Knorr, III, Esquire
Chief Deputy Attorney General
Chief, Appellate Litigation Section
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA   17120

Counsel for Appellee

---

O P I N I O N

---

**ROTH**, Circuit Judge:

Shelly Ulitchney appeals a post-trial grant of judgment to defendant on the section 1983 claims that she asserted against a state parole officer, Jeff Ruzicki, for his warrantless entry into her home to arrest a parole violator.  For the reasons that follow, we will affirm.

## I. Background

### A.  Facts

On July 17, 2006, after serving a prison sentence for convictions related to possession of unlicensed firearms and possession of cocaine with intent to distribute, Claudie Robinson was granted parole from state prison.  Although Robinson was required to report to the parole office in Reading, Pennsylvania, he absconded to Wilkes-Barre.  There, Robinson met Ulitchney in October 2006 and they began dating.

2

Ulitchney owns and resides in a house at 305 Park Avenue in Wilkes-Barre. Robinson spent a significant amount of time at the Ulitchney residence. With Ulitchney's assistance and permission, Robinson applied for and obtained a state photographic identification card, Social Security card, and birth certificate, all listing the 305 Park Avenue address as his designated residence. Throughout this period, Ulitchney did not know that Robinson was on parole or that he had failed to report to parole, but she did know that Robinson had been in prison.

Ruzicki learned from a parole agent in Reading that Robinson had recently obtained a state photographic identification card with 305 Park Avenue listed as his address. Ruzicki then provided a photograph of Robinson to Parole Agent Terry Vieney and directed him to surveil the 305 Park Avenue residence for any sign of Robinson. On December 11, Vieney observed a man who appeared to be Robinson enter the 305 Park Avenue residence; he notified Ruzicki. Vieney continued to surveil the residence until Ruzicki arrived shortly thereafter. Ruzicki had assembled a team of four members of the Wilkes-Barre Police to assist him in arresting Robinson -- in part because a Wilkes-Barre Police Detective had advised Ruzicki that going to that residence was "a high-risk situation" due to Ulitchney's association with drug-dealers. Ruzicki did not have an arrest warrant or a search warrant and had not completed a forty-eight hour detainer form for Robinson.

Ruzicki, in plain clothes, knocked and then pounded on the front door. One uniformed officer waited at his side and the others stood watch in back. Ulitchney asked who was at the door, and Ruzicki explained that he was a parole officer seeking

Robinson. Ulitchney then opened the door slightly and requested that Ruzicki give her a minute to put her dogs away. Ulitchney closed the door and went to the back of the house to put one of her dogs into its crate. Ruzicki began pounding on the door again. The longer Ruzicki waited at the door, the more he began to fear for his safety so that he took out his firearm. When Ulitchney again opened the door a few inches, Ruzicki pushed his body up against the door. Ulitchney pushed back. Ruzicki then pointed his finger at her, striking her in the forehead, and held his gun inches from her forehead. As Ruzicki entered, he saw Robinson walking down the stairs from the second floor. He raised his gun at Robinson. Robinson surrendered peacefully. From the first knock on the door until Ruzicki's entry into the house, approximately 10 minutes had elapsed.

## B. Procedural History

On December 3, 2007, Ulitchney filed a 42 U.S.C. § 1983 action in the Middle District of Pennsylvania, alleging that Ruzicki's actions amounted to an illegal entry and seizure in violation of the Fourth and Fourteenth Amendments.

After discovery, Ruzicki moved for summary judgment. The District Court granted the motion as to Ulitchney's Fourteenth Amendment claim and her Fourth Amendment illegal seizure claim but denied the Motion as to her Fourth Amendment illegal entry claim. With regard to this claim, the District Court found that, though Ruzicki was a parole agent, his lack of a warrant or detainer for the arrest of Robinson rendered Ruzicki's entry into Ulitchney's residence unlawful, regardless of whether Ruzicki had reason to believe that Robinson resided and was present at 305 Park Avenue.

4

The District Court found that exigent circumstances were lacking but did find a genuine issue of material fact as to whether Ulitchney consented to Ruzicki's entry.

Prior to trial on the consent issue, the District Court resolved the parties' motions *in limine* and addressed a stipulation that the parties had proffered. First, the District Court ruled from the bench that, under Rule 404(b), it would exclude evidence relating to a prior incident when Ruzicki forcibly entered a residence. Next, the court turned to the parties' stipulation:

> It is hereby agreed by the parties that neither defendant Jeff Ruzicki nor any other law enforcement official present at Shelly Ulitchney's home possessed any warrant on December 11, 2006 when they approached Shelly Ulitchney's residence. When a law enforcement official does not possess a warrant, that official may only enter the private residence of an individual such as plaintiff Shelly Ulitchney with the voluntary consent of that individual.

Regarding the stipulation, Ruzicki clarified to the District Court that he still adhered to his summary judgment argument that he did not need to possess a warrant for his entry to be legal and that he wished this issue to be preserved. The stipulation was read into the record and the District Court instructed the jury to accept the "stipulation of fact" to be "binding and conclusive for the purposes of this trial."

After a two day trial, the jury returned a verdict in favor of Ulitchney, finding that Ruzicki had entered Ulitchney's residence without her consent and awarding her compensatory damages of $13,000 and punitive damages of $4,000.

Ruzicki filed a post-trial motion for judgment as a matter of law, renewing his argument that *Payton v. New York*, 445 U.S. 573 (1980) authorized his warrantless entry into Ulitchney's residence for the purposes of arresting a parolee reasonably believed to

5

be present and residing therein.[1]  On December 30, 2009, the District Court granted the post-trial motion in Ruzicki's favor and acknowledged that "its prior ruling was in error." The court found that a parole officer may make a warrantless arrest of a parolee in a residence where the parole officer has reason to believe the parolee resides and is present. After finding Ruzicki's entry into Ulitchney's home constitutional, the District Court entered a final judgment in favor of Ruzicki.  Ulitchney appealed.

## III.  Discussion[2]

Ulitchney argues that the District Court erred in (1) entering post-trial judgment in favor of Ruzicki following its conclusion that a parole officer may enter a home – without a warrant or consent – where the officer has reason to believe a parole violator resides and is present within; (2) setting aside a joint stipulation which formed the basis for the parties' presentation of evidence and argument at trial; (3) denying Ulitchney's motion *in limine* to admit evidence, under Rule 404(b), of Ruzicki's engagement in prior, similar acts;[3] and (4) granting summary judgment in favor of Ruzicki with respect to Ulitchney's illegal seizure and due process claims.[4]

---

[1]     Ruzicki also raised this argument at the summary judgment stage and at the close of Ulitchney's trial presentation.

[2]     The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343.  We have jurisdiction under 28 U.S.C. § 1291.

[3]     Because we will affirm the judgment as a matter of law in favor of Ruzicki, we need not consider whether the District Court erred in applying Rule 404(b).

[4]     Because we find no constitutional violation, we need not consider Ruzicki's claim of qualified immunity.

## A. Whether a Parole Officer may make a warrantless entry into a residence when he has reason to believe a parolee resides and is present there.

We review de novo a motion for judgment as a matter of law and apply the same standard as a district court. *Curley v. Klem*, 499 F.3d 199, 205-06 (3d Cir. 2007). We conclude that the District Court properly denied Ulitchney's Fourth Amendment illegal entry claim. Under *Payton*, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 603. As we have interpreted this rule, a law enforcement officer in possession of an arrest warrant may enter a residence when he has "a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." *United States v. Veal*, 453 F.3d 164, 167 (3d Cir. 2006) (internal quotation omitted).[5]

In the parole context, the warrant requirement and level of suspicion required to effectuate an arrest in a home are relaxed because parole is a part of the continuum of state-imposed punishments. *Samson v. California*, 547 U.S. 843, 850 (2006); *Griffin v. Wisconsin*, 483 U.S. 868, 875-80 (1987). Moreover, Pennsylvania law authorizes parole officers "to arrest without warrant, writ, rule or process any parolee or probationer under the supervision of the board for failing to report as required by the terms of his probation

---

[5]  Ulitchney argues that *Steagald v. United* States, 451 U.S. 204 (1981), applies here because Ruzicki was entering a third party's house. *Steagald* announced a corollary to *Payton*: "the Fourth Amendment does not permit police to enter a third person's home to serve an arrest warrant on a suspect." *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005) (discussing *Steagald*, 451 U.S. at 211-14). *Steagald*, however, does not deal with the situation of a parole violator when there is an entry into the place where a parole violater is present and is reasonably believed to reside. *Steagald* is therefore distinguishable.

7

or parole or for any other violation of the probation or parole."[6]  61 PA. STAT. ANN. § 6152.

Here, Ruzicki had probable cause to believe that Robinson had violated parole by failing to report and that Robinson resided and was present within the 305 Park Avenue residence.  Ruzicki knew that Robinson had used that address to obtain official government documents.  Moreover, Vieney spotted Robinson entering 305 Park Avenue and observed the house until Ruzicki entered it.  Thus, Ruzicki, as a parole officer pursuing a parole violator, did not violate the Fourth Amendment by entering Ulitchney's residence without a warrant.  *See United States v. Hill*, 967 F.2d 902, 910 (3d Cir. 1992).

**B.  Whether the District Court properly determined that the stipulation, addressing a question of law, was non-binding.**

Ulitchney contends, however, that the stipulation requiring voluntary consent to enter the residence bound the parties and that the District Court improperly ignored it in granting judgment to Ruzicki.  We do not agree.

Our review of the legal effect of a stipulation is plenary.  *Coltec Indus. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002).  It is well-settled that courts "are not bound by the parties' stipulations concerning questions of law."  *In re Mintze*, 434 F.3d 222, 228 (3d Cir. 2006).  It is a similarly "well-recognized rule of law that *valid* stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside."

---

[6]  Even in the absence of a statute authorizing warrantless arrests, this Court has "concluded that a parolee's car or home can be searched on the basis of reasonable suspicion alone."  *United States v. Baker*, 221 F.3d 438, 444 (3d Cir. 2000); *see also United States v. Hill*, 967 F.2d 902, 909 (3d Cir. 1992).  We therefore reject Ulitchney's additional argument that Pennsylvania regulation, 37 PA. CODE § 71.1, limits parole agents' warrantless entry.  *See Virginia v. Moore*, 553 U.S. 164, 171-74 (2008).

*Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998) (internal quotation omitted) (emphasis added). A stipulation of law, however, is invalid, and must be distinguished from a stipulation of fact. *United States v. Reading Co.*, 289 F.2d 7, 9 (3d Cir. 1961) (upholding a factual stipulation, because, in part, it "is not a stipulation of the controlling law, which the parties could not validly make").

Accordingly, to the extent the stipulation at issue purported to set forth the relevant law, it did not preclude the District Court from considering Ruzicki's legal contention that a warrant was not required to enter Ulitchney's home. We are also not persuaded by Ulitchney's arguments that the District Court's post-trial decision to set aside the stipulation improperly prejudiced her and that Ruzicki had waived any argument inconsistent with the joint stipulation. Ruzicki repeatedly pressed his argument – before, during, and after trial – that, as a parole officer, he may make a warrantless entry into a residence where he reasonably believes the parolee resides and is present. Ulitchney, having already had the opportunity to fully contest this point, was not unfairly prejudiced when the District Court set aside the stipulation and resolved the case on the basis of Ruzicki's position.

### C. Whether the District Court properly determined that the limited seizure of Ulitchney was objectively reasonable

We exercise plenary review of the District Court's grant of summary judgment, and apply the same standard as a district court would. *Jackson v. Danberg*, 594 F.3d 210, 215 (3d Cir. 2010). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a seizure occurred and that it

9

was unreasonable."[7] *Curley v. Klem*, 499 F.3d 199, 203 n.4 (3d Cir. 2007) (internal

quotation omitted). "A seizure occurs '[w]henever an officer restrains the freedom of a

person to walk away.'" *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002) (quoting

*Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). And, "[t]he test of reasonableness under the

Fourth Amendment is whether under the totality of the circumstances, 'the officers'

actions are objectively reasonable in light of the facts and circumstances confronting

them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d

772, 776 (3d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Ruzicki's temporary seizure of Ulitchney was reasonable under the circumstances

as a matter of law. Thus, the District Court properly granted summary judgment on this

claim. When considered in the light most favorable to Ulitchney, the evidence

demonstrates that Ruzicki tapped his finger on Ulitchney's forehead, pointed a gun at her

forehead briefly, forced his way into the residence by pushing open the door Ulitchney

was attempting to push shut, and restricted her movement as Robinson was arrested and

removed. In light of the volatile nature of arresting an absconding parolee, who had been

convicted for gun and drug offenses, and of the warnings of a "high-risk situation" as a

result of a tie to drug-dealers, Ruzicki acted reasonably in entering the residence and

momentarily seizing Ulitchney. Ruzicki could reasonably infer from his ten-minute wait

on the porch that Robinson might have been warned of his presence, justifying a

---

[7]    While Ulitchney claims the seizure violated both her Fourth Amendment and Fourteenth Amendment substantive due process rights, "[s]uch claims are properly analyzed under the Fourth Amendment's 'objective reasonableness standard,' rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989).

heightened sensitivity to potential threats and a drawing of his weapon. *See Mellott v. Heemer*, 161 F.3d 117, 122-24 (3d Cir. 1998). The limited seizure of Ulitchney, therefore, was objectively reasonable.

**IV. <u>Conclusion</u>**

For the reasons expressed above, we will affirm the judgment of the District Court.