NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2188
_____

YVONNE WILLIAMS,

Appellant

v.

CITY OF PHILADELPHIA; DAVID PRESKI, IN HIS OFFICIAL CAPACITY AS
DIRECTOR, PRE-TRIAL SERVICES UNIT; DANIEL LOREDO, IN HIS
INDIVIDUAL CAPACITY AS AN ACTOR UNDER COLOR OF STATE LAW; JOHN
WOLF, IN HIS INDIVIDUAL CAPACITY AS AN ACTOR UNDER COLOR OF
STATE LAW; WALTER BOSAK, IN HIS INDIVIDUAL CAPACITY
AS AN ACTOR UNDER COLOR OF STATE LAW
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-02713)
District Judge:  The Honorable John P. Fullam

Submitted Under Third Circuit L.A.R. 34.1(a)
November 18, 2011

BEFORE:  RENDELL, AMBRO, and NYGAARD, *Circuit Judges*

(Filed: December 5, 2011)

_____

OPINION OF THE COURT
_____

NYGAARD, *Circuit Judge.*

A jury found against the Appellant, Yvonne Williams, on her civil rights claims. Williams filed a motion for a judgment as a matter of law notwithstanding the verdict pursuant to Federal Rule of Civil Procedure 50(b). The District Court denied the motion and Williams has appealed. We will affirm.

## I.

Because we write solely for the benefit of the parties, we set forth only those facts that are germaine to the issues on appeal.

Appellees Wolf, Loredo and Bosak, officers employed by the First Judicial District of Pennsylvania, were called upon to execute a bench warrant issued against Williams' son, Andrew Peno. Peno had failed to appear for trial in state court on charges of driving while intoxicated. Upon arrival at the address Peno provided the state court, Wolf knocked on a side door while Bosak covered the front and Loredo took up a position in the rear of the residence. Wolf knocked for several minutes before noticing an individual looking through the blinds from a second floor window. More time passed before Williams finally opened the door. Wolf identified himself and indicated that he was there to execute a bench warrant against Peno. Wolf attempted to enter the house by turning the handle of the screen door. It was at this point that Williams became "very

angry." Testimony indicated that Williams quickly grew "furious," "boisterous and excited," and "very aggressive."

After entering the house, Wolf began questioning Williams, to no avail. Williams refused to answer any questions, identify herself, or even acknowledge that she recognized a photograph of her son. Williams then attempted to flee by going upstairs. Fearing she may be attempting to secure a weapon, Wolf and Bosak followed. The situation quickly escalated to a point where, fearing for his own safety, Wolf drew his weapon. Williams was then restrained while the officers searched, without success, for Peno. The officers did locate Peno's cell phone, driver's license, and found men's clothing on the premises.

Williams filed a complaint alleging that the officers violated her constitutional rights by entering her home to execute the bench warrant. Williams additionally alleged that the City of Philadelphia was liable for the officers' actions because it maintained a practice, policy and custom of permitting warrant officers to unconstitutionally execute warrants. Finally, Williams asked for injunctive relief against Appellee David Preski, the director of pre-trial services for the First Judicial District.

The case proceeded to trial. Before charging the jury, the District Court awarded a judgment as a matter of law to the City of Philadelphia and Preski pursuant to Fed.R.Civ.P. 50(a). The jury returned a verdict in favor of Wolf, Loredo and Bosak. Williams brought a motion for judgment as a matter of law against the three officers, or, in the alternative, asked the District Court for a new trial. She also sought judgment as a

3

matter of law against Preski in his official capacity. The District Court denied Williams'

motions.

## II.

We review de novo a motion for judgment as a matter of law and apply the same

standard as a district court. *Curley v. Klem*, 499 F.3d 199, 205–06 (3d Cir. 2007). A

judgment notwithstanding the verdict may be granted under FED.R.CIV.P. 50(b) "only if,

as a matter of law, 'the record is critically deficient of that minimum quantity of evidence

from which a jury might reasonably afford relief.' " *Dudley v. South Jersey Metal, Inc.*,

555 F.2d 96, 101 (3d Cir. 1977) (quoting *Denneny v. Siegel,* 407 F.2d 433, 439 (3d Cir.

1969)); *see also Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 206, 209 (3d Cir.

1983). "On appeal, the appellate court should apply the same standard as the trial court

in determining the propriety of a judgment n.o.v." *Id.*[1]

A.      Unconstitutional Entry

Williams first argues that the jury could not, as a matter of law, find for the

Appellees because their search of her home was conducted without a reasonable belief

that her son was within the residence. Correctly, Williams points out that the police may

not enter the residence of a third party to search for an individual subject to arrest unless

they have a separate search warrant to do so or the third party's consent. *Steagald v.*

*United States*, 451 U.S. 204, 205-06 (1981). Of course, there are exceptions to this rule,

such as when the third party's residence is the residence of the person the police seek to

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331. We have jurisdiction
under 28 U.S.C. § 1291.

arrest. *Id*. at 221. Williams relies on the United States Supreme Court's decision in *Payton v. New York*, 445 U.S. 573 (1980). In *Payton*, the Supreme Court concluded that police may enter into a home without a search warrant in order to execute an arrest warrant only if "there is reason to believe [that the subject of the warrant] is within." 445 U.S. 602 (1980). We have distilled *Payton* and held that the opinion "requires that officers have a reasonable belief that the arrestee (1) lived in the residence and (2) is within the residence at the time of entry." *United States v. Veal*, 453 F.3d 164, 167 (3d Cir. 2006) (quotation marks omitted).[2]

The officers in this case were reasonable in their belief that Peno was present inside the house when they arrived. The record reveals that the officers obtained a valid residential address for Peno from the state court, an address Peno himself provided. This address was Williams' home. Further, the officers arrived to serve the warrant at eight o'clock in the evening on a week night. After knocking, the officers saw an unidentified person peering through an upstairs window. They could not determine whether this person was Peno. A subsequent delay in opening the door and Williams' hostility toward them reasonably raised the officers' suspicions that Peno could have been hiding within the home. Other behavior–such as Williams abruptly fleeing upstairs–could reasonably have been taken as consistent with an attempt to prevent Peno's apprehension.

---

[2] We have described this test using the language of probable cause. *See id*., 453 F.3d at 167 n. 3. However, the express language of the Supreme Court in *Payton* was that there need only be "reason to believe" the suspect is within. *Payton*, 445 U.S. at 603. As in *Veal*, we too conclude that the police had both reason to believe and probable cause to believe that Peno was within the residence at issue here. Hence, we need not determine which standard should be applied here.

Williams makes much of her belief that she did not consent to the search of her home. Although the Appellees maintained at trial that she did consent, they do not challenge Williams' position on appeal. Whether Williams consented to the search does not matter. Presumably, Williams argues that the Supreme Court's decision in *Steagald v. United States*, 451 U.S. 204, 205-06 (1981), rescues her. In *Steagald*, the Supreme Court held that, absent exigent circumstances or consent, the police cannot lawfully search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant. *Id*. Here, the officers reasonably believed they were executing the arrest warrant at Peno's residence because this is the address Peno himself provided. *Steagald* provides no cover for Williams. Given that the officers reasonably believed that Peno lived at this address and was inside the home, they properly entered on the authority of the arrest warrant. *See Payton*, 445 U.S. at 603.

We have reviewed the record and, considering the totality of the circumstances within the knowledge of the officers here, we find that there was reason to believe Peno was within his mother's home when the bench warrant was executed. *See Veal*, 453 F.3d at 167–68 (we "consider 'the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality,' " in determining whether the *Payton* standard is satisfied (quoting *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995)).

B.     Injunctive Relief

Williams argues that the District Court erred by denying her post-trial motion for an injunction against Preski. Williams wanted the District Court to order Preski to

6

"instruct the investigators to comply with *Payton*." The District Court denied this request, concluding that, because the jury found no constitutional violation in the first instance, no basis exists to order Preski to change the policies under which judicial districts operate. This was not error.

In *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), the Supreme Court reasoned that where a jury had exonerated the individual police officers, the city and the police department could not be held liable because "the [police officer] inflicted no constitutional injury on the respondent." *Heller*, 475 U.S. at 799. The same circumstances exist here, where the jury found for the warrant officers in determining that they did not violate Williams' constitutional rights in executing the bench warrant. Since these investigators "inflicted no constitutional injury," it is "inconceivable" that Preski and/or the First Judicial District could be held liable. *Id*; *see also Grazier v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003) ("There cannot be an 'award of damages against a municipal corporation based on the actions of . . . its officers when in fact . . . the officers committed no constitutional harm.'" (quoting *Heller*, 475 U.S. at 799)).

III.

For the foregoing reasons, the judgment of the District Court will be affirmed.